439 So.2d 465 (1983)
Thomas A. BERRY, et al., Plaintiffs-Appellants,
v.
CITY OF MONROE, Defendant-Appellee.
No. 15666-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
Rehearing Denied October 20, 1983.
Writ Denied December 16, 1983.
*466 Pharis & Pharis by F. Jean Pharis and Fred A. Pharis, Alexandria, for plaintiffs-appellants.
Thomas V. Gardner, Jr., Monroe, for defendant-appellee.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
PRICE, Judge.
This suit was originally instituted against the city of Monroe by the father of a minor child for damages arising from personal injuries sustained when his 12-year-old daughter collided with a support column in the nocturnal exhibit building at Louisiana Purchase Gardens and Zoo. Plaintiff's minor daughter has, since the time of trial, attained the age of majority and was substituted as proper party plaintiff for her personal damages. The trial court dismissed plaintiff's claim and this appeal ensues. The issue is whether the trial court erred in finding plaintiff's claim barred by victim fault or contributory negligence.
Rhonda Berry was injured in 1977 during a visit to the zoo with a church group from Pineville. She and several others of the group took a tour of the nocturnal exhibit building housing animals which are normally active at night and at rest during the daylight. For this reason, reserved lighting is used in the building to create the illusion of nighttime so that patrons may view the animals in an active state. After exiting the building with the others, Rhonda and a friend, Susan Holzenbach, decided to go through the exhibit again by themselves. On this second trip through the building, the girls noticed that a three-legged leopard that they had seen on the previous tour was not visible in his cage. Rhonda jokingly posed to Susan the idea that the animal had escaped his cage and the two of them ran for the exit. Rhonda testified she had run approximately ten steps on each foot when she collided with a large support column which she had failed to see in the darkness. She hit the column with the left side of her head. The blow caused bruising and swelling of her left eye and the surrounding area which persisted for approximately three to four weeks after the accident.
Approximately nine weeks after the collision with the support column, Rhonda suffered a continuous series of epileptic seizures which her doctors concluded were more than likely caused by the head injury. She was placed on medication to prevent further seizures. The treatment has been successful and she has not experienced a seizure since that time.
The trial court denied recovery on the basis of his finding that, whether the applicable standard is negligence or strict liability, Rhonda was guilty of victim fault sufficient to bar recovery under either theory. We agree with plaintiff's contention that this holding was in error and reverse.
The owner of a facility inviting the general public to visit its premises has a duty to exercise reasonable care to maintain the premises in a reasonably safe condition. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Weaver v. Winn-Dixie of Louisiana, Inc., *467 406 So.2d 792 (La.App. 4th Cir.1981). The lighting in the nocturnal exhibit building was planned for the purpose of providing enough light for patrons to view the animals, while keeping it dark enough for the animals to be active during viewing hours. As part of its general duty, there is a duty upon the city in maintaining this nocturnal exhibit to provide adequate lighting to protect the visiting public from colliding with objects within the building. Furthermore, consideration of the fact that amusements such as the zoo hold a special attraction for children should be elementary to the determination of what precautions are reasonably necessary for the safety of the zoo's patrons in a darkened building. Based upon the facts established in the record, we find the defendant breached this duty.
The building is constructed in a figure eight design with a support column in the center of each of the two circular sections. The columns are a dark mahogany color and each has a bench eight to ten inches in width around it. The exhibits are set into the walls of the building and each cage contains overhead ultraviolet lighting consisting of white bulbs with red covers. This was the only illumination in the building at the time of the accident with the exception of a light on each side of the walls in the middle of the structure. The single door serving as both entrance and exit was black. The support poles had no lights or reflectors, nor were there any signs warning of their existence.
Mr. Ray Dunn, a lighting expert who visited the building after the accident testified at trial to the lack of illumination in the building, estimating it at less than one footcandle. Industry standards as per the Southern Building Code require at least a lighted exit sign in such low illumination, which he felt would have silhouetted the posts, making them more visible. He stated that a typical consulting engineer would have recommended such a marking even if not specified by industry regulations.
It is obvious that the areas in which the columns are located were at that time the darkest areas of the building, being in the center farthest from the exhibits. Both they and the exit door are very dark in color as well. The zoo officials must have been aware that the great majority of the traffic through the building would be children, who are generally impulsive and unobservant. The ease with which the columns could have been made visible to even the unwary by lighting or reflectors, or padded to eliminate the risk of injury, without affecting the utility or the nocturnal nature of the exhibit leads this court to conclude that the failure to take such precautions constitutes a breach of the city's duty to zoo patrons.
The next question for our resolution is, having established the breach of a duty, was that breach a legal cause of Rhonda's accident, i.e., does the city's duty to provide adequate lighting in this building encompass the risk that a twelve-year-old child might negligently run into this pole? We believe the city should have anticipated such an occurrence, considering the recognized propensity of children for playful conduct and impetuous reactions, particularly in a recreational setting such as a zoo. It is certainly reasonably foreseeable that a child might run in the building. It is likewise foreseeable that these dark support columns would go unnoticed by a child whose attention is focused either on the exhibits or his companions. It is our conclusion, then, that the city's duty with respect to lighting in the building embraces the risk of a child such as Rhonda carelessly colliding with this column. Thus, the city's failure to provide lighting adequate to prevent the injury of a child in such a clearly predictable manner was a legal cause of the accident.
The defendant argues that it should be absolved of liability because Rhonda was contributorily negligent in failing to see the support column. Both Rhonda and Susan testified that neither saw the post until Rhonda collided with it. The trial court held that the accident would not have occurred had she been attending to where she was going.
However, the city's duty to provide adequate lighting in this exhibit building is *468 designed not only to protect prudent members of the visiting public, but even moreso to prevent injury to the unwary or inattentive young patron who would be less likely to keep to the unobstructed pathway through the building. The city must be cognizant of the limited judgment possessed by children and their propensity toward impulsive behavior in fulfilling this duty.
Where, as here, the possibility that a child will act carelessly or thoughtlessly is one of the foreseen risks which imposes upon the defendant the duty to provide adequate lighting to prevent mishaps such as the instant one, such conduct cannot at the same time excuse the breach of that duty. See Outlaw v. Bituminous Insurance Co., 357 So.2d 1350 (La.App. 4th Cir.1978), writ denied 359 So.2d 1293 (La.1978). Thus, the city may not be relieved of liability for this breach of duty by pleading Rhonda's contributory negligence.
As a result of this accident, Rhonda's left eye was severely bruised and swelled shut. Some of the discoloration spread to her right eye as well, and the testimony indicates it took more than three weeks for her eyes to heal completely. Then nine weeks after the accident she experienced a series of severe life-threatening convulsions diagnosed as, in laymen's terms, an epileptic seizure which her doctors have attributed to her head injury. We find that a general damage award of $25,000 would be proper to compensate Rhonda for the pain and suffering, embarrassment, fear, and anxiety stemming from both the black eye and the seizure.
We note particularly that, while further seizures have been prevented by medication, there can be no certainty that Rhonda will not have another seizure. Dr. Tardo, Rhonda's neurologist, testified that the social stigma and personal trauma of such seizures, as well as their life-threatening nature in some cases, warrant continuing the medication to prevent seizures until Rhonda reaches her childbearing years. At this time, the medication will probably be discontinued due to a slight possibility of birth defects and the chances of another seizure will be increased. While mere speculation of such an event cannot provide the basis for an award, the anxiety produced by the possibility of another seizure is one of the compensable items we include in our award.
We award the amount of $6,343.08 to Mr. Berry for medical expenses incurred in connection with this incident up through the time of trial. We also allow $506.25 for future medical expenses and $440 travel expenses for annual trips to Ochsner Clinic for testing which will be necessary as long as Rhonda is on the medication, and $364.65 for the cost of medication.
We reject the plaintiffs' claim for contingent medical expenses as completely speculative and the claim for Mrs. Berry's lost wages since the evidence fails to prove the necessity for her quitting work to care for Rhonda.
Finally, we assess the following as court costs:

Expert Witness Fees:
 Dr. Tardo $200.00
 Dr. Moore 250.00
 Ray Dunn,
 Electrical Engineer 500.00
 Dr. Ronald Pryer 100.00
Court Reporter Fee 231.15
 _________
TOTAL $1,281.15

For the reasons assigned, the judgment appealed is reversed and it is ordered, adjudged, and decreed that there be judgment in favor of plaintiffs Thomas A. Berry and Rhonda Berry and against defendant City of Monroe in the following amounts:
RHONDA BERRY for the sum of $26,310.90, together with legal interest thereon from date of judicial demand until paid;
THOMAS A. BERRY for the sum of $6,343.08, together with legal interest thereon from date of judicial demand until paid.
All costs of these proceedings, including this appeal, are assessed to defendant-appellee.
REVERSED and RENDERED.