546 So.2d 1301 (1989)
Ralph BROUSSARD, Plaintiff-First Appellant,
v.
OLIN CORPORATION, et al., Defendant-Appellee,
Aetna Casualty & Surety Company, Intervenor-Second Appellant.
No. 88-392.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
Rehearing Denied August 1, 1989.
*1302 Raleigh Newman, Lake Charles, for plaintiff/appellant/appellee.
Scofield, Bergstedt, etc., J. Michael Veron, Lake Charles, for defendant/appellee.
Jones, Tete, Wm. B. Swift, Lake Charles, for defendant/appellee/appellant.
Before STOKER, YELVERTON and KNOLL, JJ.
STOKER, Judge.
This is a personal injury case. A very large amount of toxic phosgene gas was accidentally released from the chemical plant of Olin Corporation, Inc. near Lake Charles, Louisiana on June 2, 1982. On that day, plaintiff was working for J.A. Jones Construction Company as a laborer on a job at the Conoco Refinery near Lake Charles. Olin Corporation and Conoco lie near each other with Interstate Highway 10 running east and west between them. Plaintiff, among many others, was allegedly exposed to the phosgene gas when it drifted from Olin to the Conoco Refinery. He alleges he was injured by the exposure. Plaintiff filed suit against Olin, National Union Fire Insurance Co. of Pittsburg (Olin's liability insurer), Larry Kerr and Jack Dorgan (employees of Olin). Aetna Casualty and Surety Company (the worker's compensation insurer for J.A. Jones Construction Company) intervened to recover benefits paid to plaintiff. There were several other defendants and third parties initially involved in this suit, and the pretrial posture of the suit was complex. However, the actual parties involved in this trial were those stated above.
After trial on the merits, the jury found that plaintiff was not exposed to the phosgene gas and suffered no injury from an exposure, resulting in a dismissal of plaintiff's and Aetna's claims against Olin.
Plaintiff appeals the judgment assigning eight assignments of error. Aetna also appeals in order to preserve its claim for reimbursement in the event of reversal of the trial court's judgment.

THE DEATH OF FRANCISCO RODRIGUEZ
Plaintiff contends the trial court erred in not allowing plaintiff to offer testimony that one person died from the same release of phosgene gas that plaintiff was exposed to. The minutes of the trial court state that defendants' motion in limine as to this evidence was granted for oral reasons which have not been included in the record on appeal.
It is well settled that a determination of relevance of proffered evidence lies within the discretion of the trial judge and will not be disturbed absent a clear showing of *1303 abuse of that discretion. State v. West, 419 So.2d 868 (La.1982); State v. Miles, 402 So.2d 644 (La.1981); see also LSA-C.E. arts. 401-403 and Official Comments (effective January 1, 1989). We find that the evidence of Rodriguez's death is a collateral matter which does not tend to prove the facts of plaintiff's exposure and injury and is therefore not relevant to the determination of plaintiff's action. Moreover, the probative value of such evidence is outweighed by the dangers of unfair prejudice, confusion of the issues and of misleading the jury. Walls v. Olin Corp., Inc., 533 So.2d 1375 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1218, 1219, 1220 (La.1989); see also LSA-C.E. art. 403 (effective January 1, 1989). The trial court did not abuse its discretion in disallowing testimony that Rodriguez died from exposure to the phosgene gas.

CROSS-EXAMINATION OF EXPERTS
Plaintiff contends the trial court erred in not permitting plaintiff to cross-examine defendants' expert witnesses by means of a published, authoritative work, the National Institute for Occupational Safety and Hazard Criteria for a Recommended Standard ... Occupational Exposure to Phosgene (1976) (the NIOSH Criteria Document). The defendants brought this issue on through a motion filed in limine. The minutes of the trial court state that defendants' motion in limine as to the NIOSH Criteria Document was granted for oral reasons which have not been included in the record on appeal. The minutes do not state that plaintiff proffered the document into evidence and it is not in the record on appeal. Hence, plaintiff has failed to preserve for appellate review this alleged error by the trial court, and we cannot consider it. LSA-C.C.P. art. 1636; McLean v. Hunter, 495 So.2d 1298 (La. 1986).

TESTIMONY AS TO FEAR OF CANCER
Plaintiff argues that the trial court erred in not allowing plaintiff to testify as to his fear of cancer. Defendant filed a motion in limine relative to such testimony which the trial judge granted for oral reasons which have not been included in the record on appeal.
Plaintiff cites Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La. 1974), as dispositive of the issue. The court in Anderson concluded that plaintiff's fear of cancer resulting from a severe radiation burn was a compensable residual of the accident. Evidence was adduced that cancer could result from a radiation burn.
In the case before us plaintiff did not show that cancer can result from phosgene gas poisoning. Plaintiff would have us distinguish between compensating plaintiff for an actual risk of cancer and compensating plaintiff for his fear of cancer. Mere speculation concerning an event cannot provide the basis for an award for anxiety. Berry v. City of Monroe, 439 So.2d 465 (La.App. 2d Cir.), writ denied, 443 So.2d 597 (La.1983). The trial court did not abuse its discretion in disallowing testimony as to plaintiff's fear of cancer.

REBUTTAL TESTIMONY
By this assignment, plaintiff contends the trial court erred in not permitting plaintiff to offer the expert testimony of Dr. Weaver to rebut the testimony of defendants' expert witness, Dr. Sklarew. Dr. Weaver's deposition was proffered into evidence.
Plaintiff's expert witness, Dr. Jacobus, testified as to the dispersion of phosgene gas in the air in plaintiff's case-in-chief. Defendants' witness, Dr. Sklarew, also addressed the issue of dispersion of phosgene gas in the air. Plaintiff then offered the testimony of Dr. Weaver, who did not testify during plaintiff's case-in-chief, to rebut the testimony of Dr. Sklarew.
Evidence which supplements that already adduced by the plaintiff is not admissible as rebuttal. Rebuttal evidence is confined to new matters adduced by the defense and *1304 not to repetition of the plaintiff's theory of the case. The admission of rebuttal evidence is largely within the discretion of the trial judge. CNG Producing Co. v. Sooner Pipe and Supply Co., 483 So.2d 1215 (La.App. 4th Cir.), writ denied, 488 So.2d 692 (La.1986); Anslem v. Travelers Ins. Co., 192 So.2d 599 (La.App. 3d Cir.1966); Johnson v. Nora, 87 So.2d 757 (La.App. 2d Cir.1956).
Plaintiff has not alleged any new matter adduced by the defense which Dr. Weaver's testimony was intended to rebut. Arguments that Dr. Weaver would have been a more neutral, objective witness than Dr. Sklarew, or that Dr. Weaver's findings on the dispersion of the phosgene gas differed from Dr. Sklarew's findings and corroborated Dr. Jacobus's findings, do not constitute rebuttal of new matter introduced by the defense. The proffered evidence was cumulative, and its purpose would have been to add weight to plaintiff's case-in-chief on the issue of dispersion. The trial court correctly disallowed Dr. Weaver's testimony on rebuttal.

DISMISSAL OF INTERVENTION
The next matter about which plaintiff complains relates to an alleged settlement between Aetna and Olin. In advance of trial the plaintiff filed a rule to require Olin and Aetna to show cause why the court should not order that there had been a realignment of parties and that the jury be informed of the realignment and of the facts and circumstances surrounding the alignment. In his motion plaintiff alleged that counsel for Olin and counsel for Aetna had informed plaintiff's counsel that Olin had purchased Aetna's claim for reimbursement of worker's compensation paid for thirty cents on the dollar. Plaintiff also alleged that Olin had hired an attorney to represent intervenor. The minutes of the trial court show that the rule to show cause was heard and was taken under advisement, but there is no record that the rule was ever passed on by the trial court. The record contains nothing to show that plaintiff ever proved that a settlement between Olin and Aetna took place. There is no stipulation in the record on this point.
In this appeal the plaintiff assigns as error the failure of the trial court to dismiss the intervention of Aetna or to notify the jury of what plaintiff urges was a realignment of the parties. While it is not clear to us what issues plaintiff contends are presented by the alleged facts, we cannot consider the matter in the absence of proof in the record or a stipulation of the parties to establish that Olin and Aetna did settle matters between them by the sale of the intervention claim of Aetna to Olin.
In any event, since we conclude that the jury verdict in favor of the defendants on the liability issue should be affirmed, we need not determine how the question could be relevant.

THE VERDICT
Plaintiff contends the jury erred in finding that plaintiff did not suffer an exposure to phosgene gas and in failing to make an award. Plaintiff alleges that there is no question that there was a release of phosgene gas and that plaintiff was exposed to it.
The fact of the release of gas was stipulated to by defendants. The jury specifically found that plaintiff was not exposed to the gas and, under the circumstances, we cannot find that the verdict is clearly wrong. The verdict sheet (Tr. 1105) reflects that the jury answered the first interrogatory propounded to it, and that question and the jurors' votes were as follows:
"1. WAS RALPH BROUSSARD EXPOSED
 TO PHOSGENE GAS AS A
 RESULT OF THE PHOSGENE RELEASE
 OF JUNE 2, 1982?
 3 9
 --- ---
 YES NO"
The instructions on the verdict sheet required the jury to go no further.
The gas release took place in June 1982. Plaintiff was admitted to the hospital *1305 emergency room for alleged burning eyes, blurred vision, headache and vomiting and was found to have moderate conjunctivitis and a clear chest. Expert testimony established that the immediate symptoms of phosgene gas exposure (coughing, choking, watering and burning eyes, nausea, vomiting, abdominal cramping, weakness and possible cardiac irregularities) appear within 24 hours of the exposure. Plaintiff testified that he experienced several of these symptoms but there was no eyewitness to plaintiff's actual exposure. Plaintiff did not seek medical attention until the next day, although his wife testified he was feeling badly the evening of the alleged exposure.
Expert testimony established that the long-term effects of phosgene gas exposure can be pulmonary emphysema, development or aggravation of asthma, chronic bronchitis, bronchiolitis, increased susceptibility to respiratory infections and development of nonspecific bronchial hyperreactivity. Plaintiff was diagnosed in December 1982 as having chronic bronchitis and an abnormal chest x-ray. In April 1984 plaintiff tested positive for asthma. Other medical testimony established that plaintiff's symptoms are compatible with the fact of his having smoked two packs of cigarettes a day for about 25 years. Plaintiff has also been diagnosed as an epileptic.
Finally, plaintiff testified that his doctor told him he needed to stop working because of the exposure to phosgene gas. Contradictory testimony was adduced, however, that plaintiff was fired shortly after the incident for leaning on his shovel instead of working. Dr. Kaimal, who diagnosed plaintiff's asthma in 1984, testified that he told him he should not work around fumes or dust.
At oral argument counsel for the plaintiff presented a new contention not set forth in an assignment of error and which had not been briefed. With considerable fervor counsel urged that plaintiff had been prejudiced by the failure of the trial judge to explain to the jury the meaning of the word "exposed" as used in jury Interrogatory No. 1. Counsel theorizes that because the instructions to the jury directed it to go no further if it answered Interrogatory No. 1 in the negative, the plaintiff did not get the benefit of the jury's total appreciation of facts. Specifically, counsel urges that the jury should have been permitted and required to pass on the issue of whether or not plaintiff suffered damages. If we understand counsel's theory, it is that the question of sufficiency of damages was one determinant of whether or not plaintiff was exposed to phosgene gas.
We find no merit to this contention urged in oral argument. To begin with, counsel admits that no objection to Interrogatory No. 1 was made at the trial. Beyond this, on the merits of the contention, the jury was reasonably justified in answering that there was no exposure upon two factual bases: on the bases of the evidence relating to dispersion of the gas and the medical evidence showing that plaintiff did not suffer physical symptoms or sequelae which typically follow exposure to phosgene gas.
In this connection it is interesting to compare the jury finding in Walls v. Olin Corp., Inc., supra. That case involved three plaintiffs who claimed damages from exposure to phosgene gas in the same incident as is involved in the case before us. In a consolidated trial the jury answered two interrogatories. In answer to Interrogatory No. 1 the jury found that the three plaintiffs were exposed to phosgene gas as a result of the phosgene gas release of June 2, 1982. However, in answer to Interrogatory No. 2 the jury found that neither of the plaintiffs sustained actual damage as a result of that exposure. We affirmed the verdict as to these cases on appeal. In our opinion, even if the jury in the case before us had found that Ralph Breaux, the plaintiff, had been exposed to phosgene gas in some degree, there was sufficient medical evidence before the jury from which it could reasonably have found that Breaux did not sustain physical injury or damage from the exposure. Based upon *1306 such a conclusion, the jury could have reasonably concluded that plaintiff was not exposed to the gas. That conclusion would have been fortified by the evidence as to dispersion.
The jury clearly disbelieved plaintiff's testimony as to the fact of his exposure to phosgene gas. After careful review of the record, we find that the jury did not clearly err in finding that plaintiff was not exposed to the gas and therefore was not injured by it.

LOSS OF EARNING CAPACITY
Plaintiff alleges the trial court erred in not allowing an economist to testify as to plaintiff's loss of earning capacity due to his injuries resulting from the phosgene gas release. We do not reach this issue in view of our affirmance of the rejection of plaintiffs' claims.

ASSESSMENT OF COSTS
Plaintiff alleges the trial court erred in not assessing a portion of the court costs to intervenor Aetna. We agree.
The principles underlying plaintiff's argument were analyzed in Moody v. Arabie, 498 So.2d 1081 (La.1986). In Moody, the worker's compensation insurer as intervenor brought a rule to show cause why it should not be paid by way of priority for reimbursement from the judgment awarded to the claimant against the third-party tortfeasor. The insurer contended the claimant's attorney was only entitled to attorney's fees of one-third of the amount to which the claimant was entitled after the insurer was reimbursed. The claimant's attorney contended he was entitled to attorney's fees of one-third of the entire judgment in favor of the claimant. The Supreme Court held in favor of the claimant's attorney and remanded with instructions as to the correct legal basis for the allocation of the costs of recovery between the worker and the employer:
"The workers' compensation law is silent on the subject of who is obliged to pay the costs of litigation or recovery against the third person. Formerly, the statute expressly provided for the employer to be reimbursed his costs and a reasonable attorneys' fees, thereby, in effect, imposing the total burden of recovery costs upon the worker. Act 247 of 1920. In 1958, however, the statute was amended to eliminate this provision and to leave the statute devoid of any statement on the subject. Act 109 of 1958. Because the workers' compensation statute does not expressly provide for the allocation of litigation costs, or costs of recovery, the statute must be construed with reference to other laws on the same subject matter. La.C.C. art. 17.
"When an employer pays compensation to a worker who has been injured by the wrongful act of a third person, the employer and the worker become co-owners of a property right consisting of a right to recover damages from the third person. Since the Civil Code has not dealt in detail with co-ownership of single things, the task to construct a doctrine has fallen to the writers, using as help the statutory principles furnished by the titles on ownership, successions, and partnership contract. La.C.C. art. 480; Aubry & Rau, Property § 221, 329.
"The interests of co-owners do not represent distinct material units. Therefore none of them can exercise without the consent of the other co-owners any physical or legal acts aimed at the whole or even the smallest specific portion of the thing, if such acts imply the present and direct exercise of ownership. Id. 331. No co-owner may cause any material changes, unless all the co-owners have consented, tacitly if necessary. Acts by a sole co-owner, if useful to all, are ratified as a defacto agency (negotiorum gestio). Id. Each co-owner may force the others to contribute to the costs of maintenance and conservation of the common thing in proportion to their interests; but they can acquit themselves of this duty by abandoning their co-ownership right. Id. 333, 338. Cf. Whatley *1307 v. McMillan, 152 La. 978, 94 So. 905 (1923); Scott v. Hunt Oil Co., 152 So.2d 599 (La.App.2d Cir.1962); and Planiol, Treatise on the Civil Law, Vol. 1, Part 2, § 2512-13, 2523.
"Applying this doctrine to the action and right against the third person, we conclude that, with respect to any cost necessary to the maintenance and conservation of the right, each co-owner is always obliged to contribute in proportion to his interest in the right, and that, with respect to any other litigation costs, each co-owner is responsible for his proportionate part of reasonable and necessary expenses and legal services that accrue to his benefit. Under the doctrine, each co-owner is liable for necessary maintenance and conservation costs, such as those involved in filing suit and interrupting prescription, regardless of whether he consented to them. Ordinarily he would not be bound for other litigation costs incurred without his consent, but the workers' compensation law dispenses with the requirement of his consent. The statute authorizes either the worker or the employer to affect and materially change the whole right by prosecuting a suit against the third person and by recovering for all damages sustained. Moreover, whenever the worker or the employer intervenes in such an action, he tacitly consents to a material change in the right and ratifies all reasonable and necessary acts which are useful and beneficial to his interest.
"Under these principles the necessary and reasonable costs of recovery are to be apportioned between the worker and the employer according to their interests in the recovery. First the court must determine the employer's proportionate interest in the recovery by determining the ratio or percentage that the amount of compensation paid or due at the time of recovery bears to the total recovery. For example, in the present case, in which the compensation paid is $49,286.23 and the total recovery is $82,303.72, the employer's proportionate interest in the recovery is calculated as follows:

Employer's reimbursement = Employer's share of recovery
--------------------------
Recovery from third person
 $49,286.23 = 59.88%
 ----------
 $82,303.72

Accordingly, because the employer has a 59.88% interest in the recovery, 59.88% of the cost of the recovery should be assessed to him. Reciprocally, the worker has a 40.12% interest in the recovery and is therefore bound to pay 40.12% of the cost of the recovery.
"The costs of recovery are the necessary and reasonable expenditures and obligations, including those for attorneys' fees, incurred in effecting recovery."
* * * * * *
"By deducting the employer's proportionate share of recovery costs from the compensation actually paid, the court arrived at the net amount to be reimbursed to the employer or the carrier. If the proceeds of the judgment are sufficient after the employer or carrier has been paid its net share of recovery, the excess shall be used to pay the worker his net share of recovery. Of course, if the proceeds of the judgment are not sufficient to refund the employer or carrier the compensation actually paid less its proportionate share of recovery costs, the worker will receive nothing because under the workers' compensation act the claim of the employer or carrier takes precedence. La.R.S. 23:1103." 498 So.2d at 1085.
See also Eskine v. Regional Transit Authority, 531 So.2d 1159 (La.App. 4th Cir. 1988); Samanie & Barnes v. Lawler, 517 So.2d 340 (La.App. 1st Cir.1987); Whitehead v. Texada, 506 So.2d 966 (La.App. 3d Cir.1987), writ granted, 520 So.2d 416 (La. 1988).
The idea behind the holding in Moody is apparently that the intervenor in such a suit against a third-party tortfeasor can no longer have a "free ride" in the prosecution of the case. This was discussed in A. Johnson, *1308 Workers' Compensation, 48 La.L. Rev. 519 at 533 (1987), as follows:
"It seems obvious that neither the attorney for the worker nor the attorney for the carrier can expect to permit the other to carry the burden of prosecuting the case and then demand a share of the recovery as an attorney's fee. There is no doubt a method in the court's madness. Some have felt that there is a certain imbalance in the proceedings when the worker lines up against alleged tortfeasors and insurers. The defendants probably have greater staying power in the litigation and might simply `wear down' the worker into a modest settlement at best. In many instances, the role of the intervening carrier was relatively small; it often was content to let the workers' counsel do most of the work and it would simply pick up its portion of any recovery at the end. Seen in this light, the court's opinion might be seen as an effort to even up the sides just a bit, and to require as a practical matter that the intervening carrier participate more actively in the litigation as an opponent to the insurers on the other side. In theory, if the intervening carrier is going to bear a portion of the fee paid to the worker's lawyer, the carrier is going to be much more active in the case.
"Indeed, it is not impossible that in some instances the carrier might simply choose to let the worker's counsel represent its own interests and save the cost of one attorney. Perhaps in a truly unusual case, the worker's attorney would permit counsel for the carrier to handle the matter. Such unusual alliances should prove very interesting. However, one thing is clear: Neither the carrier nor the worker can any longer be indifferent to the role played by the other, or by their respective counsel. This, it is submitted, was precisely what the supreme court was striving to achieve in Moody."
In the case before us the intervening worker's compensation insurer, Aetna, allowed the burden of prosecuting the claimant's and Aetna's claims to be carried solely by the claimant's attorney. This case is clearly distinguishable from Moody, Eskine, Samanie & Barnes and Whitehead, where damages were awarded against the third-party tortfeasor. In this case plaintiff was unsuccessful in his claims against Olin. However, we feel that the underlying principles of sharing the necessary expenses of maintaining a co-owned property right should be applied in this case. It would be inequitable to force the co-owner plaintiff to bear the full expense of an unsuccessful prosecution and only a portion of the expense of a successful prosecution when the interest of the intervenor in the prosecution of the case is the same in either event. Of course, the Supreme Court's formula for calculating the intervenor's proportion of costs cannot be applied where no recovery was had. In such a case, some equitable division of court costs between claimant and intervenor is fair. Therefore, we hold that Aetna should be assessed with one-half the court costs stemming from the trial of the case.

AETNA'S ASSIGNMENT OF ERROR
Aetna has preserved its claim for reimbursement at the appellate level in the event that we reverse the trial court's holding on the strength of plaintiff's appeal. Since we affirm the trial court's holding on the issue of defendant's liability to plaintiff, we must also affirm the trial court's judgment dismissing Aetna's claims as intervenor.

DECREE
For the reasons given, the judgment of the trial court is affirmed in all respects except the assessment of court costs. The judgment of the trial court as to costs relating to the trial of the case is amended to assess those costs equally to plaintiff and intervenor. Costs of appeal are assessed equally to plaintiff and intervenor.
AFFIRMED AS AMENDED.