629 So.2d 485 (1993)
Harold RANEY, etc., Plaintiffs-Appellants,
v.
WALTER O. MOSS REGIONAL HOSPITAL, et al., Defendants-Appellees.
No. 93-145.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
Rehearing Denied January 5, 1994.
*486 Steven William Hale, Lake Charles, for Harold Raney, etc.
Robert Wickliffe Fenet, Lake Charles, for Walter O. Moss Regional Hosp., et al.
Before DOMENGEAUX, C.J., and STOKER and THIBODEAUX, JJ.
THIBODEAUX, Judge.
Plaintiffs, Harold Raney, Marcus Lambert, Melodi Lambert, Cynthia Lambert Carrier, and Jennifer Lambert Williams, brought suit against Walter O. Moss Regional Hospital and the State of Louisiana through the Department of Health and Human Resources for damages. The plaintiffs' suit filed on May 23, 1985 asserted that they developed fears of contracting hepatitis "B" after Barbara Raney, the wife of Harold and the mother of the other plaintiffs, became a carrier of the disease after being pricked by contaminated needles at her place of employment, Moss Regional Hospital, between February 28, 1984 and September 26, 1984. The defendants filed an exception of no cause of action and in the alternative, no right of action, based upon their assertion that the plaintiffs' exclusive remedies were under the workers' compensation scheme. The trial judge rendered a memorandum opinion denying the defendants' exception except as to Mr. Raney's consortium claim. An exception of prescription was also denied.
After the trial judge ruled in favor of the plaintiffs on the merits of the claims, both sides appealed. For the following reasons, we affirm.

ISSUES
The defendants assert the following assignments of error: (1) the trial court erred in denying the various exceptions of no cause or right of action and in not finding, after trial, that the plaintiffs' exclusive remedies were under the workers' compensation act; (2) the trial court erred in denying defendants' exception of prescription; (3) the trial court erred in allowing evidence of plaintiffs' fear of contracting hepatitis "B" without the prerequisite showing that it was more probable than not that they will contract hepatitis "B;" (4) the trial court erred in finding that the plaintiffs proved that the breach of duty owed was a substantial factor in bringing them harm; (5) the trial court erred in awarding damages based on testimony of psychological damages only without any evidence of physical injury to plaintiffs; and, (6) *487 the trial court erred in awarding damages which were not supported by the evidence.
Plaintiffs complain that the awards to them were inadequate.

FACTS
Ms. Barbara Raney was employed by Moss Regional Hospital as a custodial worker in the housekeeping department. Part of her employment responsibilities included emptying trash cans. While in the course and scope of her duties at Moss Regional Hospital, Ms. Raney was pricked by contaminated needles while emptying trash cans on at least two occasions, February 28, 1984 and September 26, 1984.
While undergoing blood tests for an unrelated illness between October 8 and October 15, 1984, Ms. Raney was informed by Dr. Eileen C. Stade, her then treating physician, that she was a carrier of hepatitis "B." Because Ms. Raney was a carrier of hepatitis "B," the family underwent a series of vaccinations which consisted of three injections taken over a period of six months. It was determined that Mr. Raney developed an immunity to hepatitis "B." The doctors who testified stated that because he possessed an immunity indicated that he either previously contracted hepatitis "B" and had now become immune or that he received the hepatitis "B" vaccination. Regardless of his immunity status, Mr. Raney as well as the four children underwent tests to determine whether they too acquired hepatitis "B." In addition, the plaintiffs underwent vaccinations to prevent development of hepatitis "B." The plaintiffs also testified that they have a genuine fear of contracting hepatitis "B" from their wife and mother. The plaintiffs assert a damage claim under La.Civ.Code art. 2315.
The trial court found that the evidence established that Ms. Raney, while employed by Moss Regional Hospital, contracted hepatitis "B" through exposure to contaminated needles that were improperly disposed of and that the family's legal proceedings were timely filed. The trial court determined liability of Moss Regional Hospital pursuant to La.Civ.Code art. 2315 and used a duty/risk analysis to establish the defendant's liability.
The trial court awarded the following damages:

(1) Mr. Raney General Damages $2,500.00
 Past Medical Expenses $3,148.80
 Future Medical Expenses $2,505.00
(2) Ms. Carrier General Damages $1,500.00
 Future Medical Expenses $3,575.00
(3) Ms. Williams General Damages $1,500.00
 Future Medical Expenses $3,575.00
(4) Ms. Lambert General Damages $1,500.00
 Past Medical Expenses $ 303.00
 Future Medical Expenses $4,105.00
(5) Mr. Lambert General Damages $1,500.00
 Past Medical Expenses $ 333.00
 Future Medical Expenses $3,485.00

LAW AND DISCUSSION
A. Does La.R.S. 23:1032 Bar Plaintiffs' Tort Claim?
The defendants filed an exception of "no right and no cause of action" on the grounds that under Louisiana law the plaintiffs' claims are barred by the exclusive remedy provisions of the workers' compensation law, La.R.S. 23:1032. Plaintiffs argue that the exception has no validity because their tort claim is brought pursuant to La.Civ. Code art. 2315 and is not the claim of Ms. Raney, the injured employee, and, therefore, is unrelated to workers' compensation.
This issue arose in previous years in the context of consortium claims. Prior to the amendment of La.Civ.Code art. 2315 in 1982, which created a consortium claim, Louisiana *488 legislation provided for no such right of action, and the jurisprudence denied that such an action existed. Theriot v. Damson Drilling Corp., 471 So.2d 757 (La.App. 3d Cir.), writ denied, 472 So.2d 907 (1985). Subsequent to the amendment, children and husbands of employees injured while in the course and scope of their employment, attempted to bring loss of consortium claims pursuant to La.Civ.Code art. 2315. The courts consistently sustained exceptions of "no right and no cause of action" because of the exclusive remedy provisions of the workers' compensation law, even though the compensation laws did not provide an action for loss of consortium, service and society because of injuries to an employee covered by workers' compensation.
The plaintiffs are not pursuing a loss of consortium claim. The defendants argue that plaintiffs are nevertheless limited by the workers' compensation laws in the same manner as if they had brought a loss of consortium claim. Conversely, the plaintiffs contend that their claim for damages due to fear of contracting hepatitis "B," medical expenses and pain and suffering due to testing for the disease and obtaining vaccines against the disease is not the employee's claim, and is not prohibited by the exclusivity provisions of the compensation laws, La.R.S. 23:1032.[1]
Defendants also rely on the language of several cases in which various claims in tort by employees' dependents or other family members were uniformly rejected. They contend, like the defendants in Cushing v. Time Saver Stores, Inc., 552 So.2d 730, 731 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1281 (La.1990), "that these cases recognize that the exclusivity bar applies even though the family members assert claims for separate injuries, distinct from those suffered by the employees themselves, such as a loss of consortium." Like our brethren of the first circuit court of appeal in Cushing, we disagree. The plaintiffs' claims are legally cognizable under Louisiana law.
In Cushing, the first circuit clearly explained when it is that a claim in tort brought by dependents or other family members would be barred by the workers' compensation act.
"The Act itself and all jurisprudence construing its various provisions, up to this time, have been focused on injuries to employees, and resultant losses by them and certain of their family members, based on the injuries to the employees. With regard to the losses of the family members, these might be economic, such as a loss of support because the injured employee was no longer coming home with a pay check, or they might be intangible, such as a loss of consortium because the injured employee was no longer there to participate in family life ... [T]hese losses, while rightfully termed `separate and distinct' and `independent' from those injuries sustained by the employee, always hinged upon the injuries of the employee ... [T]he family suffered a loss based on that injury. Thus, the claims of the family members *489 were derivative of the employee's injury, even though the language utilized in the cases recognized an individual loss sustained by each family member, albeit one for which no claim could be asserted."
Cushing, 552 So.2d at 731-732.
The first circuit went on to hold that a child's injury while in utero due to an injury suffered by its mother while in the course and scope of her employment was in no way derivative of the mother's injury. The Cushing court based its holding on the fact that whether the mother of the brain damaged child continues to bring home a pay check or to participate in the child's life has no relevance to the child's alleged brain damage brought about when the mother injured herself on the job while pregnant. See also, Adams v. Denny's Inc., 464 So.2d 876 (La. App. 4th Cir.), writ denied, 467 So.2d 530 (1985), (where parents were allowed to bring a claim for the loss of their child even though the mother was injured while pregnant and engaged in her employer's business).
The Adams decision is based upon the fact that the parents' loss of the fetus was not an "injury" within the exclusivity provisions of the workers' compensation laws. La.R.S. 23:1021(7) defines injury as:
"`Injury' and `personal injuries' include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted."
Like the issue stated by the court in Adams, the question here is whether the losses suffered by the plaintiffs fit Section 1021's definition of "injury." Plaintiffs are not claiming in their tort suit a loss of consortium. What is included in the tort claim is one for the pain they have experienced and will continue to experience due to undergoing the hepatitis "B" inoculations as well as the fear that they may contract the disease from Ms. Raney and the medical expenses associated with remaining hepatitis "B"-free. The plaintiffs' claims are not claims for "injury" which means violence to the "physical structure of the body" of the employee. Adams, supra, 464 So.2d at 877.
This court is aware of the line of cases holding plaintiffs' actions barred by the exclusivity section of the workers' compensation laws. Atchison v. May, 201 La. 1003, 10 So.2d 785 (1942), (plaintiffs had no right to recover under the compensation law because they were not dependent on the deceased employee); Hawkins v. Employers Casualty Co., 177 So.2d 613 (La.App. 3d Cir.), writ denied, 248 La. 429, 179 So.2d 272 (1965), (plaintiff had no right to recover because the death occurred more than two years after the accident although the action had not prescribed under general tort law); See also, Theriot, supra. In each instance, the injury suffered by the plaintiffs was compensable, but the plaintiffs were granted no rights or remedies under the workers' compensation law. However, that line of cases can be distinguished from the present case in that the claims of the plaintiffs in those cases, such as loss of consortium, wrongful death or survival action, were not only hinged upon the injury to the injured employee, and a derivative thereof, but more importantly the claims were directly intertwined with the employee's injury. Consequently, a plaintiff bringing an action for loss of consortium experiences a loss because, the employee injured on the job is suffering. In the case sub judice, plaintiffs' claims are corollary to the suffering of Ms. Raney. They are not seeking damages because she can no longer do the things she did before the needle prick or cannot bring home a pay check.
The situation in the present case is more analogous to that of Adams and Cushing, supra. Like the child in Cushing, whether Ms. Raney is there to continue bringing home a pay check or to participate in her husband's and children's lives has no relevance to the family's alleged fear of contracting hepatitis "B" and undergoing testing for and vaccinations against hepatitis "B." Thus, we hold that the trial judge was correct in denying the defendants' exception of no right or cause of action.

B. Did the Claims of Plaintiffs Prescribe?
On September 4, 1991, the trial judge denied the exception of prescription filed by *490 the defendants. Defendants contend that Ms. Raney was a carrier of hepatitis "B" on or before May 13, 1982. Further, defendants claim that Ms. Raney gained knowledge of her status shortly thereafter. Defendants further argue that because there was evidence that Ms. Raney's condition existed approximately three years prior to the date plaintiffs filed suit, their cause of action has prescribed.
Ms. Raney testified that she was first made aware of her hepatitis "B" carrier status between the dates of October 8, 1984 and October 15, 1984, while hospitalized in Houston for complaints of leg pain. Mr. Raney and the children testified that until they were told by Ms. Raney, in 1984, that she was a hepatitis "B" carrier, they were unaware of her condition. The defendants base their argument on the fact that in 1982, Ms. Raney, as a participant of Moss Regional Hospital's blood donor drive, donated blood and the Louisiana Blood Center tested her blood donation sample which revealed that she was positive for hepatitis "B" surface antigen. Consequently, the Center refused her donation and a stamp or permanent reject was placed on Ms. Raney's donor card. Ms. Raney testified that she never received notification that her sample tested positive for hepatitis "B" surface antigen. Therefore she did not know she was a carrier of hepatitis "B" in 1982.
Ms. Marie Sanders, vice-president of administrative services for the Louisiana Blood Center, testified as to the normal course of business in handling blood samples that test positive for disease. Ms. Sanders stated that she worked for the blood center for over twenty years. She further stated that when a unit of donated blood reaches the blood center, a sample is taken out and tested for, among other things, hepatitis "B" surface antigen. If the test results are positive, a notation of that status is made on the donor card. Thereafter, a person who has been rejected for whatever reason is sent notification of the test results. However, Ms. Sanders admitted that there was no written procedure of notification at the time that Ms. Raney donated blood. She further stated that there was no way to know if Ms. Raney actually received the notification or that if she did, that she knew what it meant.
Ms. Raney insists that she never received notice in 1982 that her blood donation tested positive for hepatitis "B" surface antigen. Ms. Raney's actions in October of 1984, as well as that of the plaintiffs, support Ms. Raney's assertion that she did not know of her carrier status until 1984. After being told by her doctor in Houston that she possessed hepatitis "B" and could pass it on to her family, Ms. Raney immediately spoke with her husband and her children and saw to it that each took the proper precautions so as to avoid contracting the contagious disease.
Whether Ms. Raney knew that she was a carrier of hepatitis "B" in 1982, is a question of fact for the trial judge to decide. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). In reviewing the factual findings of the trial judge, we are limited by the manifest error, clearly erroneous standard of review. Where the factfinder's conclusion is based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). After a thorough review of the record, we cannot say that the trial judge was clearly erroneous in finding that the plaintiffs' action did not prescribe.

C. Did The Trial Judge Err In Allowing Evidence Of Plaintiffs' Fear Of Contracting Hepatitis "B," And In Awarding Damages For Mental Distress Where There Has Been No Physical Impact Upon The Plaintiffs?
Moss Regional Hospital argues that plaintiffs' fear is unreasonable and unfounded because numerous doctors agreed that they have no or very little risk of contracting hepatitis "B" and that the trial judge erroneously based his opinion and award on the fact a real fear exists. Moss Regional Hospital claims a fear, without evidence that plaintiffs have a great risk of contracting the disease whether real or not, is not compensable.
*491 The trial judge stated, at the close of evidence on the issue of the plaintiffs' fear of contracting hepatitis "B," that the low probability of any of the plaintiffs contracting hepatitis "B" due to Ms. Raney's carrier status and Mr. Raney's immunity does not "negate the fact there is a real fear" for which compensation is due.
In Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974), the supreme court concluded that the plaintiff's fear of cancer resulting from a severe radiation burn was compensable. Evidence demonstrated that cancer could result from a radiation burn. In Broussard v. Olin Corp., 546 So.2d 1301 (La.App. 3d Cir.1989), where Anderson was distinguished from the Broussard plaintiff's situation, we stated:
"In the case before us plaintiff did not show that cancer can result from phosgene gas poisoning. Plaintiff would have us distinguish between compensating plaintiff for an actual risk of cancer and compensating plaintiff for his fear of cancer. Mere speculation concerning an event cannot provide the basis for an award for anxiety."
Broussard, supra, 546 So.2d at 1303. We held, in Broussard, that the trial judge did not abuse its discretion in disallowing testimony as to the plaintiff's fear of cancer. In this case, however, there is a real and genuine probability, albeit low, of developing hepatitis "B."
Although Wisner v. Illinois Central Gulf Railroad, et al, 537 So.2d 740 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La. 1989) cited by plaintiffs, involves the trial judge's refusal to exclude evidence in reference to an increased risk of cancer as opposed to testimony by plaintiffs of their fear of contracting cancer, it makes clear that a person may recover for a justified fear that he may acquire a disease. Anderson, supra, makes it clear that if there is any possibility of acquiring a disease, no matter how remote, a person's fear of acquiring that disease is compensable. The supreme court stated:
"While to a scientist in his ivory tower the possibility of cancerous growth may be so minimal as to be untroubling, we are not prepared to hold that the trier of fact erred in finding compensable this real possibility to this worrying workman, faced every minute of his life with a disabled and sometimes painful hand to remind his of his fear."
Anderson, 304 So.2d at 353.
We find this case analogous to the situation in Anderson. Several doctors testified that they were uncertain of the long term protective effects of hepatitis "B" inoculation. Further, the doctors all recommended that intimate contact be limited and that Mr. Raney continue to use prophylactics when engaging in sexual activity with his wife. If there was no chance that the plaintiffs could contract hepatitis "B," there would be no reason for the doctors to recommend that the plaintiffs receive liver screening tests periodically for a number of years. As to Mr. Raney, only Dr. Stade testified that he was immune due to his previous contraction of hepatitis "B." The remaining doctors could not say if his immune status was due to a vaccination or the acquisition of the disease. All medical testimony revealed that if Mr. Raney was immune due to undergoing the series of hepatitis "B" vaccinations in the early 1980's, there was a possibility that he could still contract hepatitis "B." Thus, we conclude that the trial judge was not in error when he allowed testimony by the plaintiffs of their fear of contracting hepatitis "B."

D. Emotional Distress Without Physical Injury. Is It Compensable?
With respect to infliction of emotional distress absent physical injury or contact, Louisiana law has been capsulized as follows:
"[T]he evolving view is toward the recognition of a duty imposed on the defendant to refrain from the negligent infliction of serious emotional distress in special circumstances where the mental anguish is the clearly foreseeable result or when a special relationship exists between plaintiff and the defendant."
Clomon v. Monroe City School Board, 572 So.2d 571, 583-584 (La.1990).
In Clomon, the Louisiana Supreme Court permitted a motorist who struck and killed a child to collect damages for emotional distress from the school bus driver who negligently *492 discharged the child from his bus. The motorist was permitted to recover despite the fact that she suffered no physical injury or apparent impact to her body, did not know the child, and was found contributorily negligent.
Clomon, was an extension of the supreme court's landmark holding in Lejeune v. Rayne Branch-Hospital, 556 So.2d 559 (La. 1990), which marked Louisiana's abandonment of the "impact" and "zone of danger" rules developed in common law jurisdictions. We must conclude, following Clomon and Lejeune, that under special circumstances, physical harm or physical impact is not a prerequisite to recovery for emotional distress.

E. Did The Trial Judge Commit Manifest Error In Finding That Moss Regional Hospital's Negligence Was The Cause of Plaintiffs' Injuries?
Moss Regional Hospital contends that the trial judge erred in finding that the plaintiffs proved that the breach of duty owed to Ms. Raney was a substantial factor in bringing harm to the plaintiffs.
The duty/risk analysis guides Louisiana courts in making the determination as to whether a plaintiff may recover in negligence. The first element is whether the conduct complained of was a cause-in-fact of the accident. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Holt v. Rapides Parish Police Jury, 574 So.2d 525 (La. App. 3d Cir.1991).
Moss Regional Hospital argues that there was no proof of causation because even if it breached a duty owed to Ms. Raney, the plaintiffs failed to demonstrate a causal link which caused Ms. Raney to contract hepatitis "B" or that the breach of duty to provide Ms. Raney with a safe place to work caused the plaintiffs' damage. The trial judge found Moss Regional Hospital responsible under the negligence theory because it failed to insure that contaminated needles were properly disposed of. This policy was to prevent employees from accidentally receiving needle pricks and the possible spread of disease. The threshold question is whether Moss Regional Hospital's failure to see that contaminated needles were properly disposed of was a cause-in-fact of the plaintiffs' damages.
An act or omission is a cause-in-fact of harm to another if it was a substantial factor in bringing about the harm. Socorro, 579 So.2d at 939; Holt, 574 So.2d at 528. Factors which may be considered in determining whether the actor's negligent conduct is a substantial factor include, whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of harm. Trahan v. State Dept. of Transportation and Development, 536 So.2d 1269 (La.App. 3d Cir.1988), writ denied, 541 So.2d 854 (1989). Causation is a question of fact in which the trial judge's determinations are entitled to great weight and will not be disturbed on appeal absent manifest error. Brock v. Winn Dixie Louisiana, Inc., 617 So.2d 1234 (La.App. 3d Cir.), writ denied, 620 So.2d 848 (La.1993). Where there are factual issues upon which evidence is in conflict, reasonable evaluations of credibility and reasonable inferences of fact by the trial judge should not be disturbed on review. Dobson v. Louisiana Power & Light Co., 567 So.2d 569 (La.1990).
The contaminated needle that pricked Ms. Raney was not disposed of properly in the needle breaker box; it was dumped in the wastebasket without being broken. Ms. Raney on at least two occasions was pricked while emptying a wastebasket. The medical testimony indicates that one of the ways of contracting hepatitis "B" is by use of contaminated needles. Ms. Raney was informed, sometime after her contaminated needle prick incident, that she was a carrier of hepatitis "B" and that her husband and children were at risk of contracting the disease because it is contagious. Moss Regional Hospital, by not strongly enforcing the contaminated needle disposal policy, set in motion a series of continuous forces which could and did result in the plaintiffs' harm. The trial judge's reasonable inferences of fact that because Ms. Raney was pricked with a contaminated needle she developed hepatitis "B" and thereby subjected her family to the possibility of contracting the disease as well, is not manifestly erroneous. The mere fact *493 that some evidence in the record would furnish a reasonable factual basis to contest this finding does not require a reversal of a factual finding that is not clearly wrong. This assignment of error has no merit.

F. Damages
Moss Regional Hospital urges that the trial judge abused his discretion in awarding excessive damages. On the other hand, the plaintiffs insist that the damages awarded should be increased.
In addressing Moss Regional Hospital's and the plaintiffs' assertions of error as to the trial judge's award of damages, the Louisiana Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) states the applicable law as:
"[B]efore a court of appeal can disturb an award made by a trial court ... the record must clearly reveal that the trier of fact abused its discretion in making its award... Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court ... It is never appropriate for a court of appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
Recently, in Hae Woo Youn v. Marine Overseas Corp., et al, 623 So.2d 1257 (1993), the supreme court emphasized that the discretion accorded to a trier of fact in an award of general damages is "great" and even vast. Consequently, an appellate court should rarely disturb such an award. Furthermore, when damages are insusceptible of precise measurement, much discretion is left to the trial judge to assess reasonable damages. La.Civ.Code art. 1999.
We have thoroughly reviewed the record to see whether it supports the trial judge's award. On the whole, considering the record evidence, we conclude that the trial judge's award is within his discretionary range. This assignment of error is without merit.
Accordingly, for the foregoing reasons, the trial judge's judgment is affirmed. Costs of this appeal are assessed against the defendants, W.O. Moss Regional Hospital and the State of Louisiana, through the Department of Health and Human Resources (now, the Department of Health and Hospitals), in the amount of $4,528.92.
AFFIRMED.
NOTES
[1] At the time this lawsuit was brought, this statute provided:

§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.